**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**UNēCO, INC., Respondent.**

**No. 20236.**

United States Court of Appeals, Eighth Circuit.

Nov. 12, 1970.

---

William R. Stewart, Atty., N.L.R.B., Washington, D. C., for petitioner.

Dean G. Kratz, Omaha, Neb., for respondent.

Before VAN OOSTERHOUT and BRIGHT, Circuit Judges, and NEVILLE, District Judge.

PER CURIAM.

The National Labor Relations Board determined that respondent UN&CO, INC. had violated § 8(a) (1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1), by threatening to discharge an employee for union activity and by promising a wage increase to its employees in an attempt to discourage union membership. The Board further determined that respondent's discharge of four employees for their union organizational activities violated § 8(a) (3) of the Act, 29 U.S.C.A. § 158(a) (3). The Board's decision is reported at 175 NLRB No. 95. In this case, the Board seeks enforcement of its order requiring respondent to cease and desist from specified unfair labor practices and to reinstate those employees discharged for union activities.

The question presented to us is whether the evidence adduced before the hearing examiner supports the Board's findings. Having reviewed the record, we find adequate support for the Board's conclusions and grant enforcement of its order.

Briefly, the record establishes that on May 3, 1968, Gertrude Hutter, Margaret Smelcer and Maxine Elder, three female employees on respondent's production line, along with other female production workers, unsuccessfully requested UN&CO's management to grant female workers wages equal to those paid men with similar jobs. On May 9, the same three women, along with seven others, initiated a program to obtain union representation through Local 31, International Association of Machinists & Aerospace Workers, AFL-CIO. In connection therewith, the women distributed union authorization cards to other employees in the plant.

On Friday, May 10, Michael Payne, a fellow male employee of the three women, arranged to meet them after work in order to obtain union authorization cards for distribution among male employees. One Glen Davidson, a long-time employee of respondent,[1] witnessed, from a distance of approximately sixty feet, the meeting between Payne and the three women and saw the women deliver the

---

1. Company president, William Larson, explained Davidson's special status as follows:

    "Mr. Davidson is something of a specialist in die properties, such things as cutting threads on stainless steel. He has been with the Company since it started. He is present[ly] [in] growth pattern, and he is primarily a production worker in the die production areas, but he is also familiar with the overall operation, and all the machines in the plant. He has also been used to indoctrinate people in the use of a machine, and he is also a part of the group that sets up machines and does maintenance work."

union authorization cards to Payne. Immediately thereafter, Payne distributed one of the cards to a fellow employee. As Payne passed near the plant gate, Davidson asked him about the meeting and the cards which he possessed. Without disclosing the purpose of the meeting, Payne showed Davidson the return address side of the union authorization card and remarked that they were postcards for his wife.

On the next regular work day, Monday, May 13, the company prepared discharge notices for the three women, but did not deliver them until after work the following day. On Tuesday morning, May 14, Davidson and James Larsen, the latter substituting for the regular production line foreman, appeared at Payne's work area. Davidson asked Payne to identify himself, which Payne did. Later, that afternoon, upon inquiry by Payne, Larsen stated that the purpose of the morning interview was to get acquainted with the employees on the production line. Payne received his discharge notice upon leaving work that same afternoon.

Respondent's witnesses denied knowing that any of the four employees in question had engaged in union organizational activities on or prior to May 14, 1968, and asserted low productivity afforded a basis for discharge. Although no direct testimony establishes that the company knew the employees were engaged in union organization work, substantial evidence exists to support the Board's finding on this issue. The fact that Davidson witnessed the meeting at which the women delivered union authorization cards to Payne and the fact that he interrogated Payne in the presence of foreman Larsen a few days later furnishes a reasonable basis for inferring that Davidson had informed his employer about the earlier meeting and was directed to locate and identify Payne for the substitute production foreman. The finding that management knew of union activity in the plant is also supported by testimony that another foreman working the night shift on May 13 told an employee that the company was aware of union activity in the plant and intended to fire the organizer upon learning of his or her identity.

The hearing examiner found that respondent's claim that it discharged the four employees for a proper business reason lacked any probity. The examiner also characterized the testimony of foreman Larsen and personnel director James Lyon as containing "numerous fabrications." Upon reading the record, we find these observations justified. Absent contradictory testimony, the inference drawn by the examiner is a reasonable one based on the record. Our decision on the § 8(a) (3) violation is supported by our earlier holdings in N. L. R. B. v. Hawthorn Co., 404 F.2d 1205 (8th Cir. 1969), and N. L. R. B. v. Melrose Processing Co., 351 F.2d 693 (8th Cir. 1965).

We also find adequate support in the record for the Board's conclusions that respondent committed other separate unfair labor practices in violation of § 8(a) (1).

Accordingly, we grant enforcement of the Board's order.